**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

IN THE MATTER OF THE
ARBITRATION BETWEEN,

LEONARD BOSACK; SANDY LERNER;
CARTESIAN PARTNERS LP; THE
LEONARD BOSACK TRUST; THE
SANDY LERNER TRUST; RICHARD
TROIANO; THE & TRUST; & CAPITAL
PARTNERS; THE LEONARD X.
BOSACK AND BETTE M. KRUGER
CHARITABLE FOUNDATION, INC.;
CAPITAL INC,
        *Petitioners-Appellants,*

        v.

DAVID C. SOWARD; & MANAGEMENT
COMPANY,
        *Respondents-Appellees.*

No. 08-35248

D.C. No.
2:07-cv-00574-TSZ

14329

IN THE MATTER OF THE
ARBITRATION BETWEEN,

LEONARD BOSACK; SANDY LERNER;
CARTESIAN PARTNERS LP; THE
LEONARD BOSACK TRUST; THE
SANDY LERNER TRUST; RICHARD
TROIANO; THE & TRUST; & CAPITAL
PARTNERS; THE LEONARD X.
BOSACK AND BETTE M. KRUGER
CHARITABLE FOUNDATION, INC.;
CAPITAL INC,
          *Petitioners-Appellants,*

                v.

DAVID C. SOWARD; & MANAGEMENT
COMPANY,
          *Respondents-Appellees.*

No. 08-35458

D.C. No.
2:07-cv-00574-TSZ

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Western District of Washington
Thomas S. Zilly, Senior District Judge, Presiding

Argued and Submitted
June 4, 2009—Seattle, Washington

Filed July 23, 2009
Amended October 26, 2009

Before: William C. Canby, Jr., David R. Thompson and
N. Randy Smith, Circuit Judges.

Opinion by Judge Thompson

## COUNSEL

Kathleen M. Sullivan, Redwood Shores, California, for the appellant, Bosack.

Steven Smith, San Francisco, California, for the appellant, Lerner.

J. Daniel Sharp, San Francisco, California, for the appellees.

---

## ORDER

The slip opinion filed July 23, 2009 is amended as follows:

At slip opinion page 9514, line 25, after <did not disregard or ignore these cases.> insert <Nor did the panel improperly interpret these cases "to render [them] inapplicable to this case." *Comedy Club II*, 553 F.3d at 1293. Its decision does not, therefore, amount to manifest disregard for the law. *See*, *e.g.*, *id.*; *Kyocera*, 341 F.3d at 1003.>

At slip opinion page 9514, line 25, through page 9515, line 13, delete <Whether the panel misinterpreted . . . would amount to manifest disregard of the law.>

With these amendments, the panel of Judges Canby, Thompson and N. Randy Smith has voted unanimously to deny petitioners' petition for rehearing. Judge N. Randy Smith has also voted to deny the petitioners' petition for rehearing by the court en banc, and Judges Canby and Thompson have recommended denial of that petition.

The full court has been advised of the petition for court rehearing en banc, and no judge of the court has requested en banc rehearing. *See* Fed. R. App. P. 35(b).

The petitions for panel rehearing and for rehearing by the court en banc are DENIED.

No further petitions for panel rehearing or for rehearing en banc will be accepted for filing.

## OPINION

THOMPSON, Senior Circuit Judge:

Leonard Bosack ("Bosack") and Sandy Lerner ("Lerner") entered into arbitration with their former financial manager, David C. Soward ("Soward") to resolve multiple disputes arising out of the parties' soured relationship.

The panel of arbitrators ("panel") made several interim awards, one of which was final, and one Final Award. Soward prevailed on his conversion and tort claims, and was awarded substantial compensatory and punitive damages as well as attorney fees and costs. The district court confirmed the award. Bosack and Lerner appeal. We have jurisdiction under 28 U.S.C. § 1291 and we affirm.

## BACKGROUND

Bosack and his wife Lerner were the founders of Cisco Systems. They employed Soward as their investment manager. The three formed & Capital Partners, L.P., ("& Capital"). Soward served as the general partner, and Bosack and Lerner were limited partners.

Several years later, Bosack and Soward formed Cartesian, a second partnership, for the purpose of managing Bosack's "high touch" investments. Soward was the general partner of Cartesian; Bosack was a limited partner. A written partnership agreement for Cartesian (the "Wood Agreement") was drafted, but never signed.

A decade or so later, Bosack and Lerner began to suspect Soward had breached his fiduciary duties in managing their assets. They discovered that Soward had made undocumented loans to himself and his friends. Soward was removed as the general partner of & Capital, and of Cartesian. Bosack and Lerner then formed SLLB, L.L.C., and it replaced Soward as the general partner of Cartesian.

Soward demanded arbitration, seeking (among other things) a dissolution of Cartesian and an accounting of his partnership interest. Bosack and Lerner participated with Soward in the arbitration proceeding. It lasted two years, during which more than sixty days of hearings were held, more than twenty witnesses testified, and over five hundred exhibits were entered into evidence. Due to the complicated nature of the proceedings, the parties agreed to proceed in stages. The panel entered a series of five interim awards, and then one Final Award.

The results of the awards were mixed. In Interim Award 1, the panel determined that the terms of the Wood Agreement governed the Cartesian partnership, though that agreement had never been signed. The panel determined that Soward breached his fiduciary duties, but that Bosack had no right to remove him as a general partner of Cartesian. Under the terms of the Wood Agreement, the panel held that Soward remained a limited partner in Cartesian after he was removed as the general partner. The panel concluded that the value of Soward's partnership should be calculated as of September 30, 2006. Interim Award 1 was not made final.

Interim Award 2 is not involved in this appeal.

In Interim Award 3, the panel determined the value of Soward's partnership interest was $1,496,391. Award 3 was the only interim award the arbitration panel made final and immediately enforceable.

In Interim Award 4, the panel ruled in favor of Soward on two tort claims. After Bosack removed Soward as the general partner of Cartesian, the panel determined that, under Delaware law, Soward was entitled to an accounting and a prompt distribution of his partnership interest. The panel found that Bosack had breached his fiduciary duties to Soward by failing to provide him with an accounting and distribution, and by improperly taking control of all the Cartesian assets. The panel also found Bosack and Lerner liable for conversion by their improper appropriation of Soward's interest in Cartesian. Damages awarded under Interim Award 4 were subject to a credit for payments made to satisfy Interim Award 3.

In Interim Award 5, the panel ruled that Bosack and Lerner had "acted with malice and oppression," and that Soward was entitled to punitive damages of $10,999,494 against Bosack, and $8,555,162 against Lerner.

Bosack and Lerner moved the district court to vacate Interim Awards 4 and 5, as well as the panel's Hearing Order No. 49 (finding that punitive damages applied). They also asked the district court to vacate the Final Award as to Soward's tort claims and punitive damages, and the award of related costs and attorney fees. The district court denied that motion and confirmed the panel's Final Award, which incorporated its earlier interim awards.

## STANDARD OF REVIEW

We review de novo the district court's confirmation of the Final Award entered by the arbitration panel. *Comedy Club, Inc. v. Improv West Assocs.*, 553 F.3d 1277, 1284 (9th Cir. 2009) (hereinafter "*Comedy Club II*"). Our review is limited by the Federal Arbitration Act ("FAA"), which "enumerates limited grounds on which a federal court may vacate, modify, or correct an arbitral award." *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 994 (9th Cir. 2003). "Neither erroneous legal conclusions nor unsubstantiated fac-

tual findings justify federal court review of an arbitral award under the statute, which is unambiguous in this regard." *Id.* Under § 9 of the FAA**[1]**, "a court 'must' confirm an arbitration award 'unless' it is vacated, modified, or corrected 'as prescribed' in §§ 10 and 11." *Hall St. Assocs., L.L.C., v. Mattel, Inc.*, 128 S. Ct. 1396, 1402 (2008) (citing 9 U.S.C. § 10(a)).

## DISCUSSION

Bosack and Lerner argue Awards 4 and 5, and the portion of the Final Award confirming those awards, should be vacated because: (1) the panel allegedly violated Rule 46 of the Commercial Arbitration Rules of the American Arbitration Association ("Rule 46") and the *functus officio* doctrine, (2) the panel manifestly disregarded the law, and (3) the appealed awards are completely irrational. They also appeal the award of attorney fees and costs.

## I

**[1]** Rule 46 provides that "[t]he arbitrator is not empowered to redetermine the merits of any claim already decided." This rule essentially codifies the common law doctrine of *functus officio*, which "forbids an arbitrator to redetermine an issue which he has already decided." *McClatchy Newspapers v. Central Valley Typographical Union No. 46*, 686 F.2d 731, 734 n.1 (9th Cir. 1982) (quoting *La Vale Plaza, Inc. v. R.S. Norman, Inc.*, 378 F.2d 569, 573 (3d Cir. 1967)). We include both Rule 46 and *functus officio* in our references to *functus officio*.

## A

**[2]** Before determining whether the arbitrators violated the *functus officio* doctrine, we must first address a threshold

---

**[1]**Unless otherwise noted, all subsequent statutory citations refer to the FAA.

question: whether or not the *functus officio* doctrine may be applied to an interim award. This is a question of first impression in our circuit.

**[3]** The Eighth Circuit has held that an interim award may be deemed final for *functus officio* purposes if the award states it is final, and if the arbitrator intended the award to be final. *See, e.g.*, *Legion Ins. Co. v. VCW, Inc.*, 198 F.3d 718, 720 (8th Cir. 1999). We adopt the criteria used by the Eighth Circuit, and apply them to the instant case.

Only Interim Award 3 satisfies the criteria for finality. The panel explicitly stated that Interim Awards 1, 2, 4, and 5 were not final. Furthermore, as the district court correctly found, the panel expressly reserved jurisdiction over all issues (with the exception of the accounting performed in Award 3) until issuance of the final award. Of the five interim awards, only Award 3 was expressly made final. Thus, only Award 3 may be deemed final for purposes of the *functus officio* doctrine.

**B**

Under either Rule 46 or the *functus officio* doctrine, Bosack and Lerner's argument boils down to the same core contention: they contend the panel exceeded its authority by redetermining the merits of Award 3 in Award 4. They claim that in Award 3, the panel ruled that Soward remained a partner in Cartesian through September 2006. They argue that the panel "ignored and contradicted" this ruling in Award 4 by finding that Soward ceased being a Cartesian partner in November 2003.

**[4]** Bosack and Lerner mischaracterize the scope of Award 3. The finding that Soward remained a partner was made in Award 1, not in Award 3.[2] In Awards 1 and 2, the panel deter-

---

[2]Award 1 was not final. Thus, even if Awards 4 and 5 did modify the panel's determination in Award 1 that Soward remained a Cartesian partner, such modification was permissible.

mined that the Wood Agreement controlled the Cartesian partnership, and determined that an accounting was required to determine the value of Soward's partnership interest. Award 3 was limited in scope: its only purpose was to determine the value of Soward's interest in Cartesian, according to the terms of the Wood Agreement.

**[5]** In Award 4, the panel ruled on Soward's claims for breach of fiduciary duty and for conversion.[3] The panel did not revisit its decision in Award 3 or modify the accounting or its determination of the value of Soward's partnership interest. The panel did not redetermine the merits of Award 3. Accordingly, neither the *functus officio* doctrine nor Rule 46 applies.

## II

Bosack and Lerner also contend that Awards 4 and 5 were issued in manifest disregard of the law.

Section 10(a)(4) of the FAA provides that a court may vacate an award "where the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4). Arbitrators exceed their powers when they express a "manifest disregard of law," or when they issue an award that is "completely irrational." *Comedy Club II*, 553 F.3d at 1290 (citing *Kyocera*, 341 F.3d at 997). "[F]or an arbitrator's award to be in manifest disregard of the law, '[i]t must be clear from the record that the arbitrator [ ] recognized the applicable law and then ignored it.' " *Comedy Club II*, 553 F.3d at 1290 (quoting *Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co.*, 44 F.3d 826, 832 (9th Cir. 1995)) (alterations in *Comedy Club II*).

---

[3]Under California law, a plaintiff "may plead cumulative or inconsistent causes of action" in connection with the wrongful repudiation of a partnership agreement. *Gherman v. Colburn*, 72 Cal. App. 3d 544, 564-565 (Cal. Ct. App. 1977).

## A

Lerner contends that Award 4 violates California law, because the panel failed to find that she personally exercised control over Soward's interest in Cartesian.[4]

[6] Lerner's argument, in essence, amounts to an invitation to review the panel's factual findings and legal conclusions. We are prohibited from doing so. "Neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award under the statute, which is unambiguous in this regard." *Kyocera*, 341 F.3d at 994.

[7] Arbitrators are not required to set forth their reasoning supporting an award. *Wilko v. Swan*, 346 U.S. 427, 436 (1953), *overruled in part on other grounds by Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477 (1989). An arbitrators' "award may be made without explanation of their reasons and without a complete record of their proceedings[.]" *Id.* at 436. "If they choose not to do so, it is all but impossible to determine whether they acted with manifest disregard for the law." *Dawahare v. Spencer*, 210 F.3d 666, 669 (6th Cir. 2000). Even if, as Lerner argues, the arbitrators failed to make an explicit finding that she exercised personal control over Soward's assets, this does not warrant vacatur.

[8] Furthermore, "manifest disregard . . . requires 'something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand and apply the law.' " *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 879

---

[4]Lerner also contends that the panel exceeded its authority in finding her liable for conversion in Award 4. She argues that in order to find her liable for conversion, the panel had to pierce SLLB's corporate veil. In her brief on appeal, Lerner argues that because Soward never specifically raised a veil-piercing argument, the panel could not find her liable for conversion. This argument is meritless. The issue of whether Lerner was liable for the conversion of Soward's interest in Cartesian was clearly before the panel.

(9th Cir. 2007) (quoting *San Martine Compania De Navegacion, S.A. v. Saguenay Terminals Ltd.*, 293 F.2d 796, 801 (9th Cir. 1961)). "[T]o demonstrate manifest disregard, the moving party must show that the arbitrator 'underst[oo]d and correctly state[d] the law, but proceed[ed] to disregard the same." *Collins*, 505 F.3d at 879 (quoting *San Martine Compania De Navegacion*, 293 F.2d at 801) (alterations in *Collins*). "[T]here must be some evidence in the record, other than the result, that the arbitrators were aware of the law and intentionally disregarded it." *Lincoln Nat'l Life Ins. Co. v. Payne*, 374 F.3d 672, 675 (8th Cir. 2004). Lerner has failed to point to any evidence of this in the record.

## B

Lerner also contends the panel violated § 3294(a) of the California Civil Code by awarding punitive damages against her, in the absence of "clear and convincing evidence" that she acted with "oppression, fraud, or malice."

**[9]** Lerner's argument is not supported by the record. The panel specifically found that "Lerner . . . acted with the intention of hurting Soward," and that there was "clear and convincing evidence that . . . Lerner . . . acted with malice and oppression toward Soward." Under California law, these findings could properly form the basis for an award of punitive damages. *See* Cal. Civ. Code § 3294(a).

**[10]** Whether or not the panel's findings are supported by the evidence in the record is beyond the scope of our review. *See, e.g., Kyocera*, 341 F.3d at 994; *Coutee v. Barrington Capital Group, L.P.*, 336 F.3d 1128, 1134 (9th Cir. 2003). The panel is not required to provide support for its findings in its awards, or to explain its conclusions. *Wilko,* 346 U.S. at 436. We "have no authority to re-weigh the evidence" presented to the arbitration panel. *Coutee*, 336 F.3d at 1134.

## C

**[11]** Lerner and Bosack also challenge the constitutionality of the punitive damage awards. They argue that because the compensatory damages assessed against them were "substantial," under State Farm *Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003), due process dictates that the punitive damages should not exceed a 1:1 ratio. They contend that the panel's award is presumptively unconstitutional, and that none of the guideposts identified by the Supreme Court in *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996), justify such an excessive award. The district court rejected this argument, and held that it could not vacate the arbitration award for excessiveness. We agree.

**[12]** Bosack and Lerner argue that they are not seeking review of the award simply because it is excessive, but because it was issued in manifest disregard of controlling Supreme Court precedent, and therefore the arbitrators exceeded their powers. Once again, however, Bosack and Lerner have failed to show that the panel demonstrated a manifest disregard of the law in issuing the award. The panel extensively discussed and then applied both *State Farm* and *BMW*. Contrary to Bosack and Lerner's argument, the panel did not disregard or ignore these cases. Nor did the panel improperly interpret these cases "to render [them] inapplicable to this case." *Comedy Club II*, 553 F.3d at 1293. Its decision does not, therefore, amount to manifest disregard for the law. *See*, *e.g.*, *id.*; *Kyocera*, 341 F.3d at 1003.

## D

Finally, Bosack and Lerner argue that the panel violated California law by awarding punitive damages against them for their conduct during the arbitration proceedings.

**[13]** Absent an abuse of process or malicious prosecution, "a defendant's trial tactics and litigation conduct may not be

used to impose punitive damages in a tort action." *De Anza Santa Cruz Mobile Estates Homeowners Ass'n v. De Anza Santa Cruz Mobile Estates*, 114 Cal. Rptr. 2d 708, 730 (Cal. Ct. App. 2001).

**[14]** Given the language of Award 5, we cannot say that the arbitrators based the decision regarding punitive damages on the parties' conduct in court or during the arbitration proceedings. In Award 5, the panel explicitly stated that it was basing its awards of punitive damages on Bosack and Lerner's actions, which, "repeated over time," constituted a "planned, malicious, [and] purposeful attempt" to convert Soward's interest in Cartesian. The panel punished Bosack and Lerner for their conduct by which they accomplished their conversion, not for their conduct during arbitration.

## III

Finally, Bosack and Lerner argue that Awards 4 and 5 should be vacated because they are irrational.

### A

**[15]** An award may be vacated if it is "completely irrational." *Comedy Club II*, 553 F.3d at 1288. This "standard is extremely narrow and is satisfied only 'where [the arbitration decision] fails to draw its essence from the agreement.' " *Id.* (citing *Hoffman v. Cargill Inc.*, 236 F.3d 458, 461-62 (8th Cir. 2001)) (alterations in *Comedy Club II*).

An award "draws its essence from the agreement if the award is derived from the agreement, viewed in light of the agreement's language and context, as well as other indications of the parties' intentions." *McGrann v. First Albany Corp.*, 424 F.3d 743, 749 (8th Cir. 2005); *see also Coast Trading Co., Inc., v. Pac. Molasses Co.*, 681 F.2d 1195, 1197 (9th Cir. 1982) (holding that an "arbitrator is confined to the interpretation and application of the parties' agreement" and that an

"award is legitimate only so long as it draws its essence from the . . . agreement") (quoting *United Steelworkers of Am. v. Enter. Wheel and Car Corp.*, 363 U.S. 593, 597 (1960) (internal quotation marks omitted)). Under this standard of review, we do not "decide the rightness or wrongness of the arbitrators' contract interpretation, only whether the panel's decision 'draws its essence' from the contract." *Pacific Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*, 935 F.2d 1019, 1024 (9th Cir. 1991) (quoting *New Meiji Market v. United Food & Comm'l Workers Local Union 905*, 789 F.2d 1334, 1335 (9th Cir. 1986)). We will not vacate an award simply because we might have interpreted the contract differently. *Id.*

**B**

**[16]** Bosack and Lerner contend that Awards 4 and 5 are completely irrational because they are "irreconcilable" with Awards 1 and 3, and Award 4 is "internally incoherent." Even assuming Lerner and Bosack are correct that the awards are based on contradictory findings of fact, this argument is beyond our scope of review. Under the "completely irrational" doctrine, the question is whether the award is "irrational" with respect to the contract, not whether the panel's findings of fact are correct or internally consistent. *See, e.g., Comedy Club II*, 553 F.3d at 1288; *Hoffman*, 236 F.3d at 462.

**[17]** Bosack and Lerner have failed to cite a single case in which we or any other court of appeal vacated an award because the factual findings were contradictory. We have repeatedly held that an award may not be vacated even where there is a clearly erroneous finding of fact. *See, e.g., Kyocera*, 341 F.3d at 1003 ("The risk that arbitrators may . . . make errors with respect to the evidence on which they base their rulings[ ] is a risk that every party to arbitration assumes, and such . . . *factual errors lie far outside the category of conduct embraced by § 10(a)(4).*") (emphasis added). Thus, even if the panel erred by making contradictory findings of fact, this does not render the decision completely irrational.

## C

Bosack and Lerner also contend that Award 4 is completely irrational because the Panel ignored controlling terms of the Wood Agreement. Specifically, Bosack and Lerner argue that Award 4 was issued in violation of §§ 2.3 and 8.4 of the Wood Agreement, which govern the winding up of the partnership. In contrast to the argument raised above, this argument comes squarely within the scope of the completely irrational doctrine. *See, e.g., Comedy Club II*, 553 F.3d at 1288; *Hoffman*, 236 F. 3d at 462.

Section 8.4 of the Wood Agreement provides that any change in the General Partner's status (other than a transfer of his partnership interest) will convert the General Partner's interest into a limited partnership interest. Pursuant to this section, the panel held in Award 1 that Soward's status reverted from general partner to limited partner when Bosack removed him in November 2003.

In Award 4, the panel found that Bosack's actions effected a dissolution of the partnership under Delaware law. Bosack and Lerner contend that this finding conflicts with § 2.3 of the Wood Agreement, which provides that no general or limited partner has the right to terminate or dissolve the partnership.

Bosack and Lerner also contend that the panel disregarded the terms of the Wood Agreement by finding that Soward was entitled to an accounting. Section 2.3 of the Wood Agreement states that no partner is entitled to demand or receive the return of his capital contribution.

**[18]** Had the panel found that Soward was entitled to an accounting and a distribution under the terms of the Wood Agreement, or that the Agreement mandated the dissolution of the partnership, Bosack and Lerner might be correct. But the panel did not find that Soward was entitled to the relief accorded him in Awards 4 and 5 under the terms of the Wood

Agreement. Instead, the panel found that Soward was entitled to an accounting and distribution *under Delaware law*. Similarly, the panel found that under Delaware law Bosack's actions terminated the partnership. The Wood Agreement itself provides that Delaware law controls. Accordingly, the panel's findings and conclusions in Award 4 are not inconsistent with the terms of the Wood Agreement, and are not "completely irrational."

## IV

**[19]** Bosack and Lerner offer no argument challenging the award of attorney fees and costs, outside of their joint contention that the award should be reversed on the merits. Because we affirm the district court's confirmation of the arbitration awards, we also affirm the award of attorney fees and costs.

## CONCLUSION

In sum, Bosack and Lerner have failed to demonstrate that the panel exceeded its authority. "The risk that arbitrators may construe the governing law imperfectly in the course of delivering a decision that attempts in good faith to interpret the relevant law, or may make errors with respect to the evidence on which they base their rulings, is a risk that every party to arbitration assumes, and such legal and factual errors lie far outside the category of conduct embraced by § 10(a)(4)." *Kyocera*, 341 F.3d at 1003. Lerner and Bosack accepted this risk when they consented to arbitration; they cannot now claim the benefits of expanded judicial review simply because the awards were unfavorable to them.

The judgment of the district court is **AFFIRMED.**