**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

ASPIC ENGINEERING AND
CONSTRUCTION COMPANY,
*Plaintiff-Appellant*,

v.

ECC CENTCOM CONSTRUCTORS
LLC; ECC INTERNATIONAL LLC,
*Defendants-Appellees.*

No. 17-16510

D.C. No.
4:17-cv-00224-
YGR

OPINION

Appeal from the United States District Court
for the Northern District of California
Yvonne Gonzalez Rogers, District Judge, Presiding

Argued and Submitted December 17, 2018
San Francisco, California

Filed January 28, 2019

Before: MILAN D. SMITH, JR. and JACQUELINE H.
NGUYEN, Circuit Judges, and JANE A. RESTANI,[*]
Judge.

Opinion by Judge Milan D. Smith, Jr.

---

[*] The Honorable Jane A. Restani, Judge for the United States Court
of International Trade, sitting by designation.

# SUMMARY[**]

## Arbitration

The panel affirmed the district court's order vacating under the Federal Arbitration Act an arbitration award concerning the termination for convenience of two subcontracts for the construction of buildings and facilities in Afghanistan.

The subcontracts were in support of defendants' prime contracts with the U.S. Army Corps of Engineers. The subcontracts incorporated by reference Federal Acquisition Regulation ("FAR") clauses governing termination for convenience, and they contained a clause mandating that plaintiff, a local company, owed to defendants the same obligations that defendants owed to the U.S. government. Voiding parts of the subcontracts, the arbitrator awarded plaintiff some of its claimed costs despite plaintiff's failure to comply with FAR requirements.

The panel held that, in finding that plaintiff need not comply with the FAR provisions, the arbitrator exceeded his powers and failed to draw the essence of the award from the subcontracts. The arbitrator's award was "irrational" because he improperly based his conclusion not on past practices, but on his rationalization that to enforce the FAR clauses on plaintiff would be unjust.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Walt Pennington (argued), Pennington Law Firm, San Diego, California, for Plaintiff-Appellant.

Joseph G. Martinez (argued), Dentons US LLP, Denver, Colorado; Andrew S. Azarmi, Dentons US LLP, San Francisco, California; for Defendants-Appellees.

## OPINION

M. SMITH, Circuit Judge:

In this opinion, we review the award to Aspic Engineering and Construction Company (Aspic) following arbitration between Aspic and ECC Centcom Constructors, LLC and ECC International, LLC (together, ECC). ECC and Aspic entered into arbitration to resolve how much money ECC owed Aspic after ECC terminated for convenience two subcontracts it had awarded to Aspic. The arbitrator awarded Aspic just over $1 million, but ECC sought successfully to vacate the award in the district court. We affirm the district court's vacation of the arbitration award.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.  The Subcontracts

In support of its prime contracts with the United States Army Corps of Engineers (USACE), ECC awarded Aspic two subcontracts for the construction of various buildings and facilities in Afghanistan. The first was to be performed in Badghis province (the Badghis Subcontract). The second required the construction of a training facility in Sheberghan province (Sheberghan Subcontract).

The Badghis Subcontract and the Shebergan Subcontract (together, the Subcontracts) contained terms and conditions "applicable to all U.S. Government subcontracts." Specifically, the Subcontracts incorporated many Federal Acquisition Regulation (FAR)[1] clauses by reference, or *in haec verba*. These clauses included FAR 49.2 through 49.6, which govern termination for convenience. The Subcontracts also contained the following clause mandating that Aspic owe to ECC the same obligations that ECC owed to the United States government, as set forth in the FAR clauses: "The obligations of [ECC] to the Government as provided in said clauses shall be deemed to be the obligations of Subcontractor to [ECC]."

USACE eventually terminated ECC's prime contract for convenience on the Badghis project. Days later, ECC notified Aspic that it was terminating the Badghis Subcontract for convenience. Understandably, Aspic sought payment for its expenses. On February 9, 2014, Aspic submitted its termination settlement proposal for the Badghis project to ECC. After review, ECC informed Aspic that the corroborative documents it had submitted in support of its settlement proposal were inadequate, and Aspic admitted it did not have many of the required materials. Nevertheless, ECC eventually submitted its termination settlement proposal to USACE, and included Aspic's claim for $229,915 in termination costs within that proposal.

Upon receipt of the termination settlement proposal, USACE notified ECC that it would not pay any of ECC's subcontractor termination costs—including the money Aspic claimed it was owed—until the Defense Contract

---

[1] Title 48 of the Code of Federal Regulations contains the FAR regulations.

Audit Agency had conducted an audit. Following that audit, USACE informed ECC that it had overpaid Aspic for its performance under the Badghis Subcontract. In light of that determination, USACE refused to pay any of Aspic's claimed termination costs.

USACE also terminated ECC's contract for the Sheberghan project for convenience. Two days later, ECC terminated the Sheberghan Subcontract for convenience.

Aspic again submitted a termination settlement proposal to ECC, this time requesting $1,032,462. ECC, however, did not present these claimed costs to the USACE. USACE eventually issued a no-cost termination settlement between USACE and ECC—a settlement in which USACE claimed that the money previously paid to ECC and its subcontractors, including Aspic, constituted adequate compensation.

## II. Prior Proceedings

Aspic believed it deserved more money for its efforts under the Subcontracts. In August 2015, it submitted a settlement demand for $652,000 on the Sheberghan Subcontract. ECC refused to pay, so Aspic filed for arbitration. Aspic again tried to settle the dispute—issuing settlement offers of $830,000 to ECC Centcom Constructors and $150,000 to ECC International—but ECC did not accept either of these offers.

In accordance with the Subcontracts, the parties proceeded to arbitration.[2] The Arbitrator issued a Partial

---

[2] Part A "General Terms and Conditions" of the Subcontracts contained provisions requiring arbitration for disputes arising from the contracts and the application of California law.

Final Award, awarding Aspic $1,072,520.90 and holding ECC Centcom Constructors and ECC International jointly and severally liable for the total amount. Aspic then sought attorneys' fees and costs. Contemporaneously, ECC moved to reduce the Partial Final Award by Aspic's waived damages, and opposed Aspic's request by arguing that each party ought to bear its own attorneys' fees. The Arbitrator's Final Award (the Award) incorporated the Partial Final Award, denied attorneys' fees and costs, and awarded Aspic half of the administrative fees and expenses.

Aspic filed a petition in the Superior Court for San Mateo County, California seeking to confirm the Award. Aspic also sought to reverse the Arbitrator's determination that it was not entitled to attorneys' fees. The Superior Court affirmed the Award and modified it to award Aspic attorneys' fees of $435,840, plus all of its arbitration costs. The Superior Court then denied ECC's ex parte application to vacate its prior order.

ECC removed the case to the Northern District of California. Before the district court, ECC renewed its effort to vacate the Award and the Superior Court's judgment. Aspic did not oppose ECC's motion to vacate the Superior Court's judgment, and the district court granted that motion.

The district court then held a hearing on the parties' motions to vacate the Award and to confirm and correct the Award. Following the hearing, the district court vacated the Award. The court held that the Award conflicted with the contract because the arbitrator "voided and reconstructed parts of the Subcontracts based on a belief that the Subcontracts did not reflect a 'true meetings [sic] of the minds.'" Aspic moved for reconsideration, which the court denied. Aspic then timely appealed.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction pursuant to 9 U.S.C. § 16 and 28 U.S.C. § 1291.  The Supreme Court has held that review of a district court's decision confirming an arbitration award "should proceed like review of any other district court decision finding an agreement between two parties, *e.g.*, accepting findings of fact that are not 'clearly erroneous' but deciding questions of law *de novo*."  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 948 (1995).  We apply the same standard of review where the district court vacates an arbitration award.  *See Aramark Facility Servs. v. Serv. Emp's Int'l Union, Local 1877, AFL CIO*, 530 F.3d 817, 822 (9th Cir. 2008) (applying de novo review for legal rulings and clear error for findings of fact).

## ANALYSIS

Aspic offers a litany of reasons why the Arbitrator's Award was rational.  However, that argument ignores our limited powers when reviewing arbitrated cases.  Pursuant to the Federal Arbitration Act (FAA), we "must" confirm an arbitration award unless we vacate, modify, or correct the award as prescribed in 9 U.S.C. §§ 10 and 11.  *Bosack v. Soward*, 586 F.3d 1096, 1102 (9th Cir. 2009).  "Neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review" of an arbitral award under the FAA.  *Id.*  Review of an arbitration award is "both limited and highly deferential."  *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1288 (9th Cir. 2009) (quoting *Poweragent Inc. v. Elec. Data Sys. Corp.*, 358 F.3d 1187, 1193 (9th Cir. 2004)).

We may vacate an arbitration award where, among other reasons, "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite

award upon the subject matter submitted was not made."
9 U.S.C. § 10.  We have held that arbitrators "exceed their
powers" when the award is "completely irrational" or
exhibits a "manifest disregard of the law." *Kyocera Corp. v.
Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 997 (9th
Cir. 2003) (internal citations omitted).

An award is completely irrational "only where the
arbitration decision fails to draw its essence from the
agreement."  *Comedy Club*, 553 F.3d at 1288 (quoting
*Hoffman v. Cargill Inc.*, 236 F.3d 458, 461–62 (8th Cir.
2001)).  An arbitration award "draws its essence from the
agreement" if the award is derived from the agreement,
viewed "in light of the agreement's language and context, as
well as other indications of the parties' intentions." *Bosack*,
586 F.3d at 1106 (quoting *McGrann v. First Albany Corp.*,
424 F.3d 743, 749 (8th Cir. 2005)).  Under this standard of
review, we decide "only whether the [arbitrator's] decision
'draws its essence' from the contract," not the "rightness or
wrongness" of the arbitrator's contract interpretation.  *Id.*
(quoting *Pacific Reinsurance Mgmt. Corp. v. Ohio
Reinsurance Corp.*, 935 F.2d 1019, 1024 (9th Cir. 1991)).

The question in this appeal, therefore, is not whether the
Arbitrator's Award was reasonable overall, but whether the
Arbitrator exceeded his powers in finding that Aspic need
not comply with the FAR provisions.  We hold that he did.

In this case, the Arbitrator held, in relevant part:

> The parties entered into two lengthy
> subcontract agreements for the two projects
> which were prepared by ECC and presented
> to ASPIC. *Each subcontract included very
> detailed provisions relating to Federal
> regulations governing the work as well as*

*pass through and 'Pay when/if Paid' clauses.*
The subcontracts were somewhat onerous as
to ASPIC and were clearly drafted to give
every advantage to ECC. In light of the fact
that the ASPIC was a local Afghanistan
subcontractor that had some experience with
government contracting but not nearly as
extensive as that of ECC, and in view of the
fact that the normal business practices and
customs of subcontractors in Afghanistan
were more 'primitive' than those of U.S[.]
subcontractors experienced with U.S[.]
Government work, it was not reasonable to
expect that Afghanistan subcontractors
would be able to conform to the strict and
detailed requirements of general contractors
on U.S. Federal projects. Notwithstanding
that expectation, ECC prepared its
subcontract agreements to require the same
level of precision and adherence to Federal
procedures from ASPIC as ECC had toward
the USACE through the pass through
provisions of the agreements.

It was not reasonable that when the parties
entered into the subcontract agreements, they
both had the same expectations as to the
performance of the agreements. ECC could
not expect that ASPIC would be capable of
modifying their local business practices to
completely and strictly conform to the US
governmental contracting practices that were
normal to ECC. *There was not a true meeting
of the minds when the subcontract
agreements were entered. Hence, ASPIC was*

> *not held to the strict provisions of the*
> *subcontract agreements that ECC had to the*
> *USACE.* This arbitration demonstrated that
> ASPIC conducted its business practices in a
> manner normal to Afghanistan which was
> clearly not the same as a U[.]S[.]
> subcontractor working on a Federal project in
> the U.S. (emphasis added).

Aspic contends that vacatur of the Award is not warranted because the Arbitrator did not exceed his powers in holding that ECC never intended for Aspic to conform fully to the Subcontracts' terms. Conversely, ECC argues that the Arbitrator erred by explicitly disregarding the Subcontracts' requirements. The crux of this dispute, therefore, is whether the Arbitrator improperly strayed from the plain text of the contract.

An arbitrator may interpret the contract "in light of . . . indications of the parties' intentions" and find that the parties' conduct modified the text of a contract. *See Bosack*, 586 F.3d at 1106. In *Metzler Contracting Co. v. Stephens*, for example, we held that an arbitrator acted within his powers when he concluded that the parties, "through their acts and conduct," had waived a portion of the underlying cost-plus contract. 479 F. App'x 783, 784 (9th Cir. 2012). We found "plausible" the arbitrator's interpretation of the contract despite the contract's provision limiting the parties' ability to waive contract provisions. *Id.* at 784–85.

What an arbitrator may not do, however, is disregard contract provisions to achieve a desired result. In *Pacific Motor Trucking Co. v. Automotive Machinists Union*, the arbitrator ruled that the company could not demote an employee from the Working Foreman position

notwithstanding the fact that the contract granted the company discretion over the position. 702 F.2d 176, 177 (9th Cir. 1983). We noted that while the arbitrator attempted to "justify the award on the basis of past practice . . . there was no practice indicating that the employer lacked discretion over maintaining the [Working Foreman] position." *Id.* Thus, we held that the district court properly vacated the award because the arbitrator "dispense[d] his own brand of industrial justice" by "disregard[ing] a specific contract provision to correct what he perceived as an injustice." *Id.* (quoting *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)).

Here, the Subcontracts incorporate numerous FAR provisions, including those that govern termination for convenience and the settlement procedure. FAR § 52.249-2 sets forth the procedure to be used in the event of termination for convenience. 48 C.F.R. § 52.249-2. FAR § 49.108-3 requires that each settlement be "supported by accounting data and other information sufficient for adequate review by the Government," and "in general conformity with the policies and principles . . . in this subpart and subparts 49.2 or 49.3." 48 C.F.R. § 49.108-3.

As the district court determined, the Award "conflicts directly with the [Sub]contract[s]." The Arbitrator recognized that the Subcontracts' pass-through provisions obligated Aspic to meet the FAR requirements, yet he found that Aspic "was not held to the[se] strict provisions" based on Aspic "conduct[ing] its business practices in a manner normal to Afghanistan." This finding alone—if based on past practice—would be insufficient for us to vacate an arbitral award.

In arriving at that conclusion, however, the Arbitrator evaded the pass-through provisions by determining that

there was not a true "meeting of the minds" when the parties formed the Subcontracts because "the normal business practices and customs of subcontractors in Afghanistan were more 'primitive' than those of U.S. subcontractors," and ECC could not expect Aspic to "strictly conform" to United States governmental contracting regulations. The Arbitrator then alluded to Aspic's hand-written receipts written in the "native language" and the use of dates from the Islamic calendar. The Arbitrator found that rejecting Aspic's supporting materials because they were not translated into English and the Gregorian calendar "would result in a forfeiture and unfairness in the resolution of the Aspic claims."

These facts demonstrate that despite finding that the Subcontracts plainly required Aspic to comply with the FAR sections, the Arbitrator reasoned that the expectation of a seemingly less sophisticated contractor complying with these regulations was unreasonable. Thus, the Arbitrator did not base his conclusion upon Aspic and ECC's actual past procedures, but upon his rationalization that to enforce the FAR clauses on Aspic would be unjust. This an arbitrator may not do.

By concluding that Aspic need not comply with the FAR requirements, the Arbitrator exceeded his authority and failed to draw the essence of the Award from the Subcontracts. The Award disregarded specific provisions of the plain text in an effort to prevent what the Arbitrator deemed an unfair result. Such an award is "irrational."

Our conclusion is further supported by the fact that neither party argued that the FAR provisions did not apply in their arbitration briefs. To the contrary, substantial portions of the parties' briefs emphasize the other's failure to comply with certain FAR sections: Aspic decried ECC's

violation of its duty to settle set forth in FAR § 49.108-3, and ECC contended that Aspic failed to properly present its settlement costs to ECC pursuant to FAR § 52.249-2.

We observe that it is a serious matter when an arbitral award determines that a (sub)contractor need not comply with the federal contracting regulations when no past practices demonstrate variation from those requirements. These regulations, while undoubtedly extensive, permit the government to maintain fairly uniform contracting standards in the many contracts it enters into with parties located in the United States and around the world. *See* 48 C.F.R. § 1.101 ("The [FAR] System is established for the codification and publication of uniform policies and procedures for acquisition by all executive agencies.").     To allow contractors and subcontractors, foreign or domestic, to evade the FAR provisions because a subcontractor was too unsophisticated or inexperienced to fully understand them would potentially cripple the government's ability to contract with private entities, and would violate controlling federal law.

## CONCLUSION

We have become an arbitration nation.  An increasing number of private disputes are resolved not by courts, but by arbitrators.  Although courts play a limited role in reviewing arbitral awards, our duty remains an important one.  When an arbitrator disregards the plain text of a contract without legal justification simply to reach a result that he believes is just, we must intervene.

The Arbitrator's Award in this case was "irrational" because it directly conflicted with the Subcontracts' FAR-related provisions, without evidence of the parties' past practices deviating from them, in order to achieve a desired

outcome.  We therefore affirm the district court's vacatur of the Award.  Because we affirm the district court, we also conclude that Aspic's argument that the Arbitrator erred in failing to award it attorneys' fees and arbitral costs is moot.

**AFFIRMED.**