**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

DEWITT LAMBERT,

*Plaintiff-Appellant*,

v.

TESLA, INC., DBA Tesla Motors, Inc.,

*Defendant-Appellee.*

No. 18-15203

D.C. No. 3:17-cv-05369-VC

OPINION

Appeal from the United States District Court
for the Northern District of California
Vince Chhabria, District Judge, Presiding

Argued and Submitted April 16, 2019
San Francisco, California

Filed May 17, 2019

Before: SIDNEY R. THOMAS, Chief Judge, MILAN D. SMITH, JR., Circuit Judge, and KATHRYN H. VRATIL,[*] District Judge.

Opinion by Judge Milan D. Smith, Jr.;
Concurrence by Chief Judge Thomas

---

[*] The Honorable Kathryn H. Vratil, United States District Judge for the District of Kansas, sitting by designation.

# SUMMARY**

## Employment Discrimination / Arbitration

Affirming the district court's order compelling arbitration, the panel held that racial discrimination claims under 42 U.S.C. § 1981 may be subjected to compulsory arbitration.

Following the reasoning of *EEOC v. Luce, Forward, Hamilton & Scripps*, 345 F.3d 742 (9th Cir. 2003) (en banc), addressing the arbitrability of Title VII claims, the panel held that § 1981 claims are arbitrable. Applying the *Gilmer* test, *Luce, Forward* concluded that § 118 of the Civil Rights Act of 1991, amending both Title VII and § 1981, does not bar arbitration.

Concurring, Chief Judge Thomas agreed that *Luce, Forward* was dispositive but wrote separately because he believes that *Luce, Forward* was wrongly decided. Chief Judge Thomas wrote that the statutory text of § 118, stating that arbitration should be encouraged to the extent it is appropriate and authorized by law, is ambiguous. Considering the legislative history, compelling arbitration in § 1981 actions defies Congress's intent.

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Noah B. Baron (argued) and Lawrence A. Organ, California Civil Rights Law Group, San Anselmo, California, for Plaintiff-Appellant.

Danielle L. Ochs (argued) and Roshni Chaudhari, Ogletree Deakins Nash Smoak & Stewart P.C., San Francisco, California, for Defendant-Appellee.

**OPINION**

M. SMITH, Circuit Judge:

Plaintiff-Appellant DeWitt Lambert filed suit against Defendant-Appellee Tesla, Inc. (Tesla), alleging violations of 42 U.S.C. § 1981. Tesla moved to compel arbitration, and the district court granted the motion. Lambert appealed, arguing that § 1981 claims cannot be subjected to compulsory arbitration. Following the reasoning of our en banc decision in *EEOC v. Luce, Forward, Hamilton & Scripps*, 345 F.3d 742 (9th Cir. 2003) (en banc), we hold that § 1981 claims are arbitrable.

## FACTUAL AND PROCEDURAL BACKGROUND

In his complaint, Lambert alleged that he began working as a production associate in Tesla's Fremont, California factory in 2015. His employment contract included an arbitration provision that "purport[ed] to require the parties to arbitrate disputes arising between them."

During his employment, Lambert, an African American, claimed that "the other employees consistently harassed him" due to his race. This abuse took various forms, from

petty and puerile harassment (employees would stick Lambert's tools to a table with adhesive tape and take photos with his phone without permission) to vicious and vituperative comments. Lambert's appeals to Tesla's human resources department were unavailing, and he further alleged that the company "discriminated against and retaliated against" him and "refus[ed] to promote [him] because of his race."

Lambert filed suit against Tesla in the district court, alleging violations of 42 U.S.C. § 1981. He also sought a declaration that his § 1981 claim was nonarbitrable. Tesla moved the district court to either dismiss Lambert's action or compel arbitration. The court concluded that our precedent permitted the arbitrability of § 1981 claims, and granted Tesla's motion to compel arbitration. *Lambert v. Tesla, Inc.*, No. 17-cv-05369-VC, 2018 WL 317793, at \*1 (N.D. Cal. Jan. 8, 2018). This timely appeal followed.

## STANDARD OF REVIEW AND JURISDICTION

"We review de novo the district court's order compelling arbitration." *Harden v. Roadway Package Sys., Inc.*, 249 F.3d 1137, 1140 (9th Cir. 2001). We have jurisdiction pursuant to 9 U.S.C. § 16 and 28 U.S.C. § 1291.

## ANALYSIS

"We have become an arbitration nation." *Aspic Eng'g & Constr. Co. v. ECC Centcom Constructors LLC*, 913 F.3d 1162, 1169 (9th Cir. 2019). The question before us is whether claims under § 1981 should be added to the ever-expanding list of statutory causes of action already subject to arbitration.

"Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006). The statute provides that "[a]ll persons . . . shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens . . ." 42 U.S.C. § 1981(a). It further defines "make and enforce contracts" as including "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* § 1981(b).

Lambert contends that "[t]he district court erred in failing to give full effect to the text of Section 118 of the Civil Rights Act of 1991, which limits arbitration to claims where it is 'appropriate' and 'authorized by law,'" and that under the Supreme Court's three-part test set forth in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991), § 1981 claims cannot be arbitrated.

We first outline the relevant law before considering the arbitrability of § 1981 claims.

## I. Relevant Law

### A. *Gilmer*

In *Gilmer*, the Supreme Court considered whether claims brought under the Age Discrimination in Employment Act (ADEA) can be subjected to compulsory arbitration pursuant to the Federal Arbitration Act (FAA). *See id.* at 23. The Court held that they could, but noted that "all statutory claims may not be appropriate for arbitration." *Id.* at 26. In such cases "the burden is on [the plaintiff] to show that Congress intended to preclude a waiver of the judicial forum" based on "the text of the [statute], its legislative

history, or an 'inherent conflict' between arbitration and the [statute's] underlying purposes." *Id.* (quoting *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 227 (1987)). "Throughout such an inquiry," the Court stressed, "it should be kept in mind that 'questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.'" *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

## B. Section 118

Six months after the Court issued *Gilmer*, Congress enacted the Civil Rights Act of 1991 (1991 Act), Pub. L. No. 102-166, 105 Stat. 1071, in order to "restore civil rights limited by then-recent Supreme Court decisions and to 'strengthen existing protections and remedies available under federal civil rights laws to provide more effective deterrence and adequate compensation for victims of discrimination.'" *Luce, Forward*, 345 F.3d at 747 (quoting H.R. Rep. No. 102-40, pt. 2, at 1 (1991), *as reprinted in* 1991 U.S.C.C.A.N. 694, 694). Section 118 of the 1991 Act stated, "Where appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including . . . arbitration, is encouraged to resolve disputes arising under the Acts or provisions of Federal law amended by this title." § 118, 105 Stat. at 1081. Section 118 amended both Title VII and § 1981. *See* 105 Stat. at 1071–72, 1081.

## C. *Luce, Forward*

Although we have not yet addressed the arbitrability of § 1981 claims, our en banc opinion in *Luce, Forward* is highly instructive. There, we considered the arbitrability of Title VII claims. *Luce, Forward*, 345 F.3d at 744.

As part of our analysis, we determined that our previous decision on the arbitrability of Title VII claims, *Duffield v. Robertson Stephens & Co.*, 144 F.3d 1182 (9th Cir. 1998), was "wrongly decided." *Luce, Forward*, 345 F.3d at 745. The *Duffield* court—considering, as part of *Gilmer*'s three-part test, the relevant statutory purpose—had determined that the 1991 Act was at odds with compulsory arbitration agreements, remarking,

> It [] would be "at least a mild paradox" to conclude that in the very Act of which the "primary purpose" was "to strengthen existing protections and remedies available [to employees under Title VII]," Congress "encouraged" the use of a process whereby employers condition employment on their prospective employees' surrendering their rights to a judicial forum for the resolution of all future claims of race or sex discrimination and force those employees to submit all such claims to compulsory arbitration.

*Duffield*, 144 F.3d at 1192–93 (second alteration in original) (citations omitted) (first quoting *Pryner v. Tractor Supply Co.*, 109 F.3d 354, 363 (7th Cir. 1997); and then quoting H.R. Rep. No. 102-40, pt. 2, at 1, *as reprinted in* 1991 U.S.C.C.A.N. at 694). *Luce, Forward* rejected this reasoning, concluding that *Duffield*'s presumption "that allowing compulsory arbitration weakens the 1991 Act is inconsistent with the Supreme Court's endorsement of arbitration." *Luce, Forward*, 345 F.3d at 750 (citing *Gilmer*, 500 U.S. at 30).

As for the statutory text—another of the *Gilmer* considerations—we disagreed with *Duffield*'s assertion that

the text of § 118 "is, at a minimum, ambiguous," *Duffield*, 144 F.3d at 1193, writing,

> [A]lthough the Court decided *Gilmer* close in time to the passage of the 1991 Act, we must "assume that Congress is aware of existing law when it passes legislation." *Gilmer* was decided in May 1991 and the 1991 Act was not enacted until November of that year. During this intervening six months, Congress surely became aware that *Gilmer* . . . provided the Supreme Court's prevailing assessment of employment arbitration agreements. Moreover, the legal landscape encompassed by the phrase, "to the extent authorized by law," must also include the FAA.

*Luce, Forward*, 345 F.3d at 751–52 (citation omitted) (quoting *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990)).[1] We "therefore conclude[d] that the text of § 118 does not present any ambiguity suggesting that it may be intended to preclude compulsory arbitration." *Id.* at 752.

Finally, we rejected *Duffield*'s reliance on the legislative history of the 1991 Act (the third *Gilmer* consideration), concluding that "this history should not be relied on to establish that Congress intended to preclude waiver of a

---

[1] We further noted that, "as other courts have pointed out, it would be ironic to interpret statutory language encouraging the use of arbitration and containing no prohibitory language as evincing Congress' intent to preclude arbitration of Title VII claims." *Luce, Forward*, 345 F.3d at 752.

judicial forum in derogation of a clear and unambiguous statute." *Id.* at 753.

Consequently, as had "[a]ll of the other circuits," we concluded that Title VII does not bar compulsory arbitration agreements. *Id.* at 748.

## II. Arbitrability of § 1981 Claims

In its brief order compelling arbitration, the district court relied on *Luce, Forward* and concluded that our "reasoning is binding here: if Title VII claims can be subjected to arbitration based on section 118 and the logic of *Luce, Forward*, so can section 1981 claims." *Lambert*, 2018 WL 317793, at *1. We agree. Applying *Gilmer* through the lens of *Luce, Forward* leads to the conclusion that § 1981 claims, like Title VII claims, are arbitrable.

*Gilmer* held that the nonarbitrability of a statute can be ascertained from "the text of the [statute], its legislative history, or an 'inherent conflict' between arbitration and the [statute's] underlying purposes." 500 U.S. at 26 (quoting *McMahon*, 482 U.S. at 227). Here, the 1991 Act amended § 1981 to include § 118, which encourages arbitration efforts "[w]here appropriate and to the extent authorized by law." § 118, 105 Stat. at 1081 (codified at Notes to 42 U.S.C. § 1981). When considering *this same arbitration provision* in the context of Title VII, we concluded in *Luce, Forward* that "[n]othing in the text directly demonstrates a congressional intent to preclude compulsory arbitration agreements." 345 F.3d at 751. The language is clear, and "[b]ecause the text of § 118 is unambiguous, we are precluded from considering legislative history." *Id.* at 753; *see also Ratzlaf v. United States*, 510 U.S. 135, 147–48 (1994) ("[W]e do not resort to legislative history to cloud a statutory text that is clear."); *Desiderio v. Nat'l Ass'n of Sec.*

*Dealers, Inc.*, 191 F.3d 198, 205–06 (2d Cir. 1999) (concluding that Title VII's legislative history need not be considered because the text of the arbitration provision is "clear").

Even if we were to proceed with the *Gilmer* inquiry and consider the relevant statutory purpose,[2] *Luce, Forward* would be persuasive. In *Luce, Forward*, we saw no conflict between Title VII and arbitration, explaining that "the view that compulsory arbitration weakens Title VII conflicts with the Supreme Court's stated position that arbitration affects only the choice of forum, not substantive rights." *Luce, Forward*, 345 F.3d at 750; *see also Gilmer*, 500 U.S. at 26 ("[B]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985))). Title VII and § 1981 both "express the federal policy against discriminatory employment practices," and "legislative enactments in this area have long evinced a general intent to accord parallel or overlapping remedies against discrimination." *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 470–71 (1975) (Marshall, J., concurring in part and dissenting in part) (quoting *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974)). Accordingly, just as *Luce, Forward* found no conflict between Title VII and arbitration, so we find no conflict between § 1981 and arbitration.

---

[2] We note that the *Gilmer* Court continued with an analysis of statutory purpose even though "Gilmer concede[d] that nothing in the text of the ADEA or its legislative history explicitly precludes arbitration." 500 U.S. at 26–27.

In short, we are bound to apply the reasoning of *Luce, Forward* to the case before us. In *Gilmer*, the Supreme Court determined that the ADEA—which, incidentally, features language *identical* to § 118, *see* 42 U.S.C. § 12212—"can be subjected to compulsory arbitration." *Luce, Forward*, 345 F.3d at 751 (citing *Gilmer*, 500 U.S. at 26). The 1991 Act, § 118 included, was enacted shortly thereafter, with Congress "aware that *Gilmer*" and the FAA informed the relevant legal landscape. *Id.* at 751–52. Because the unambiguous language of § 118 applies to § 1981, and the statutory purpose of § 1981 does not evince a preclusion of arbitrability, *Gilmer* and *Luce, Forward* compel our conclusion: § 1981 claims can be subjected to compulsory arbitration.[3]

---

[3] Tesla observes that, "[w]hile there is a dearth of legal precedents on this issue, the few courts addressing the arbitrability of Section 1981 claims under *Gilmer* have agreed that such claims are subject to compulsory arbitration." *See, e.g.*, *Winfrey v. Bridgestone/Firestone, Inc.*, No. 99-1405, 1999 WL 1295310, at *2 (8th Cir. Dec. 23, 1999) (citing *Gilmer* to "reject [the] argument that [] Title VII and § 1981 claims cannot be subjected to . . . mandatory arbitration provisions"); *Cirino v. L. Gordon Holdings, Inc.*, No. 13-CV-4800, 2014 WL 2880291, at *3 (E.D. Pa. June 25, 2014) ("The text of [§ 118] 'evinces a clear Congressional intent to encourage arbitration of' federal discrimination claims, including those under § 1981." (quoting *Seus v. John Nuveen & Co., Inc.*, 146 F.3d 175, 182 (3d Cir. 1998))); *Shaw v. DLJ Pershing*, 78 F. Supp. 2d 781, 782 (N.D. Ill. 1999) ("Considering this interpretation of § 118 . . . this court can find no reason that the Seventh Circuit's reasoning in *Koveleskie* [*v. SBC Capital Mkts., Inc.*, 167 F.3d 361 (7th Cir. 1999)] as to Title VII claims would not apply with equal force to claims brought pursuant to 42 U.S.C. § 1981, which is another Act amended by the 1991 [Act]."). The district court in *Shaw* also provided a practical rationale for this approach: "As § 1981 claims are often brought in conjunction with Title VII claims, this result []

Lambert's primary argument is that a proper application of *Gilmer* to § 1981 requires analysis not of § 118 and the 1991 Act, but rather the statute that created § 1981—the Civil Rights Act of 1866. Although he marshals an impressive array of primary and secondary sources in support of his investigation, the exercise itself is fundamentally flawed. Ignoring § 118 in favor of analysis of the pre-amendment § 1981 would be flatly inconsistent with *Luce, Forward*, which considered Title VII as part of the contemporary legal landscape. *See* 345 F.3d at 751–52 (noting that "the legal landscape encompassed by the phrase, 'to the extent authorized by law,' must" include both *Gilmer* and the FAA). As Tesla observes, "Lambert's suit arises under Section 1981, as amended, not earlier versions and not entirely different legislation like the 1866 [Civil Rights Act]."[4] Given this fact, as well as our reasoning in *Luce, Forward*, Lambert's analytical perambulations are ultimately unpersuasive.[5]

---

safeguards against multiple proceedings and possibly disparate outcomes." 78 F. Supp. 2d at 782.

[4] Tesla also reasonably points out that, if Lambert were correct that § 1981 claims can never be arbitrated, then § 118 would be meaningless, because it would serve to encourage arbitration for claims where it is never permitted.

[5] Additionally, Lambert cites to our decision in *Ashbey v. Archstone Prop. Mgmt., Inc.* for the proposition that § 118 is not "an unfettered endorsement of alternative dispute resolutions." 785 F.3d 1320, 1323 (9th Cir. 2015). But that opinion proceeded to explain that the "where appropriate" limiter in § 118 "signals a plaintiff cannot waive his right to a judicial forum for Title VII claims unless he does so 'knowingly.'" *Id.* (quoting *Prudential Ins. Co. of Am. v. Lai*, 42 F.3d 1299, 1305 (9th Cir. 1994)). In other words, *Ashbey* stands for the uncontroversial proposition that procedural safeguards exist to protect plaintiffs from

## CONCLUSION

*Luce, Forward* compels the same application of § 118 to § 1981 as to Title VII.  We therefore conclude that the district court correctly determined that § 1981 claims can be subjected to compulsory arbitration.

**AFFIRMED.**

---

THOMAS, Chief Circuit Judge, concurring:

I agree that this court's decision in *EEOC v. Luce, Forward, Hamilton & Scripps*, 345 F.3d 742 (9th Cir. 2003) (en banc), compels us to hold that § 1981 claims are arbitrable. I therefore concur in the majority opinion.  I write separately because I believe that *Luce, Forward* was wrongly decided.

Because the majority in *Luce, Forward* determined that the statutory text of § 118 is unambiguous, it did not consider the legislative history of the Civil Rights Act of 1991.  *See id.* at 753.   Section 118, however, merely states that arbitration should be "encouraged" to the extent it is "appropriate" and "authorized by law."  § 118, 105 Stat. at 1081.  As the dissenters in *Luce, Forward* noted, these terms are "at a minimum, ambiguous."  *Id.* at 756 (Pregerson, J., dissenting) (quoting *Duffield v. Roberston Stephens & Co.*, 144 F.3d 1182, 1193 (9th Cir. 2003) (overruled by *Luce, Forward*, 345 F.3d at 745)); *see also*, *id.* at 764 (Reinhardt, J., dissenting) (noting that the terms in § 118 are

unconscionable arbitration—a far cry from Lambert's assertion that § 118's "where appropriate" language requires a prolonged, substantive examination of a statute's pre-amendment history and purpose.

"unquestionably ambiguous"). The dissenters determined, and I agree, that pursuant to *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 23 (1991), the *Luce, Forward* majority should have recognized this ambiguity and moved on to consider § 118's legislative history. *See Luce, Forward*, 345 F.3d at 756 (Pregerson, J., dissenting); *id.* at 764–66 (Reinhardt, J., dissenting).

Section 118's legislative history explicitly states that, in order to prevent employment discrimination, Congress intended "to supplement, rather than supplant, the rights and remedies provided by Title VII." *Id.* at 766 (Reinhardt, J., dissenting) (quoting H.R. Rep. No. 102-40 pt. I, at 104 (1991)); *id.* at 760 (Pregerson, J., dissenting) (quoting the same). As did the *Luce, Forward* dissenters, I recognize that Congress "plainly thought that the [1991] Act did not allow employers to force their workers to sign compulsory arbitration clauses forfeiting their right to trial by jury in Title VII cases." *Id.* at 766 (Reinhardt, J., dissenting).

Viewed in this light, compelling arbitration in Section 1981 actions more acutely defies Congress's intent than does compelling arbitration in Title VII actions. As the majority in *Luce, Forward* noted, the EEOC may pursue Title VII claims in a judicial forum on behalf of individuals, even if the individual agreed to mandatory arbitration. *Id.* at 750. Thus, those bringing claims under Title VII retain some ability to choose the judicial forum in which their claims will be heard. The same is not true for Section 1981 claims, which must be brought by private litigants.[1] As a result of

---

[1] What is more, an individual has good reason to bring an action for racial discrimination under Section 1981 as opposed to Title VII since the statute of limitations for bringing a Section 1981 claim is longer than for a Title VII claims. *Compare Jones v. R.R. Donnelley & Sons Co.*,

our holding, an individual who signs an arbitration clause will be stripped of any ability to pursue a racial discrimination claim under Section 1981 in a court of law.

Our decision today signifies a further departure from the increased choice of fora Congress intended to bring about in the 1991 Act. However, bound by *Luce, Forward*, we are left with no option to hold otherwise. Therefore, I concur.

---

541. U.S. 369, 382–84 (2004) (concluding that Section 1981 claims are subject to a four-year statute of limitations) *with* 42 U.S.C. § 2000e-5(e)(1) (Title VII claims must be brought within 180 days after the alleged unlawful act). In addition, a plaintiff may be able to recover more damages under Section 1981. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 182 n.4 (1989), superseded on other grounds by statute, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071 (1991) (noting that a plaintiff is limited to backpay in a Title VII action, but may recovery plenary compensatory, as well as punitive damages, in a Section 1981 action).