**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

EHM PRODUCTIONS, INC., DBA
TMZ,

*Petitioner-Appellee*,

v.

STARLINE TOURS OF HOLLYWOOD,
INC.,

*Respondent-Appellant.*

No. 20-55426

D.C. No.
2:18-cv-00369-
AB-JC

OPINION

Appeal from the United States District Court
for the Central District of California
Andre Birotte, Jr., District Judge, Presiding

Argued and Submitted February 2, 2021
Pasadena, California

Filed June 24, 2021

Before: Ronald M. Gould, Kenneth K. Lee, and
Lawrence VanDyke, Circuit Judges.

Opinion by Judge VanDyke;
Concurrence by Judge VanDyke

## SUMMARY[*]

### Arbitration

The panel affirmed in part and reversed in part the district court's judgment confirming an arbitration award concerning the parties' joint venture agreement to operate a celebrity bus tour.

The JAMS arbitrator issued an award in favor of EHM Productions, Inc. ("TMZ") and against Starline Tours of Hollywood, Inc.  After the district court entered judgment confirming the arbitration award, the Ninth Circuit issued *Monster Energy Co. v. City Beverages, LLC*, 940 F.3d 1130 (9th Cir. 2019), interpreting the standard for "evident partiality" to warrant vacatur of an arbitration award under the Federal Arbitration Act.  Starline wrote letters to JAMS requesting disclosures regarding arbitrators.  After JAMS responded, Starline filed a motion for relief under Fed. R. Civ. P. 59(e), arguing that the arbitrators and JAMS failed to make disclosures required under the *Monster Energy* decision.  The district court denied the motion.

The panel held that the district court did not abuse its discretion in denying Starline's Rule 59(e) motion and failing to vacate the arbitration award for evident partiality based solely on the arbitrators' failure to disclose JAMS's nontrivial business dealings with TMZ or its counsel prior to arbitration.  The panel concluded that *Monster Energy* requires disclosure only when an arbitrator holds an ownership interest in JAMS and JAMS engages in nontrivial

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

business dealings with a party to the arbitration. Further, *Monster Energy* does not require disclosure of nontrivial business dealings with a party's counsel.

The panel held that the arbitrator did not demonstrate evident partiality by failing to provide a supplemental disclosure form with respect to a law firm when it became TMZ's counsel during the arbitration as the result of a law firm merger.

The panel concluded that the arbitrator did not exhibit evident partiality or exceed her powers by inappropriately granting an anti-SLAPP motion, and a JAMS appeal panel did not exceed its power by conducting a harmless error analysis of the anti-SLAPP ruling. The panel also concluded that the arbitrator did not exceed her powers in interpreting California partnership law.

Reversing in part, the panel held that the district court abused its discretion in denying Starline's Rule 59(e) motion based on the court's misinterpretation of JAMS's response to Starline's request for information under *Monster Energy* as an indication that JAMS and the arbitrators had nothing to disclose. The panel held that, even though *Monster Energy* was published after the district court entered judgment, *Monster Energy* applied to the arbitration proceedings at issue in this case. The panel further held that the district court clearly erred in its interpretation of JAMS's response. The panel remanded this issue to the district court to consider in the first instance how the parties can obtain from JAMS the information required by *Monster Energy*.

Concurring, Judge VanDyke, joined by Judges Gould and Lee, wrote that he shared the reservations about *Monster Energy* articulated in the *Monster Energy* dissent, and he

encouraged his colleagues to reconsider *Monster Energy* en banc.

## COUNSEL

Mohammed K. Ghods (argued), Jeremy A. Rhyne, and Lori L. Speak, Lex Opus, Santa Ana, California, for Respondent-Appellant.

Lennette W. Lee (argued) and Samuel C. Cortina, King & Spalding LLP, Los Angeles, California, for Petitioner-Appellee.

**OPINION**

VANDYKE, Circuit Judge:

Today, Starline Tours of Hollywood, Inc. urges us to adopt a significant expansion of the disclosure requirements recently set out in *Monster Energy Co. v. City Beverages, LLC*, 940 F.3d 1130 (9th Cir. 2019), in the context of arbitration proceedings. We decline such an invitation. We are likewise unpersuaded by Starline's other attempts to vacate a final award issued in its arbitration with EHM Productions, Inc. ("TMZ"). Because we agree with Starline, however, that the district court clearly erred in its interpretation of JAMS's response to Starline's request for *Monster Energy* disclosures after the conclusion of the arbitration, we remand to the district court on that particular issue.

## I.   Factual Background and Procedural History

Starline and TMZ launched a joint venture in 2012 to operate a celebrity bus tour together, but after several years, TMZ terminated their agreement on the grounds that Starline repeatedly failed to handle the enterprise's revenues in accordance with the agreement's terms. Under the joint venture agreement, Starline's failure to follow such revenue procedures was considered an incurable material breach and released TMZ from the agreement's non-compete clause. After ending the joint venture with Starline, TMZ ran a separate celebrity bus tour.

TMZ and Starline brought their claims (and counterclaims) to arbitration before Hon. Margaret Nagle (Ret.) (the "Arbitrator"), an arbitrator for JAMS. Several months after the arbitration hearing, but before the Arbitrator issued her final decision, TMZ's counsel at the time,

Caldwell Leslie, merged with the law firm Boies Schiller Flexner, LLP and notified JAMS and the parties of the merger in April 2017. The Arbitrator issued the final award in favor of TMZ on October 26, 2017. That same day, Starline emailed a JAMS case manager asking if there had been a conflicts check for Boies Schiller. The case manager responded that JAMS and the parties were notified of the law firm substitution in April 2017 and the Arbitrator "had nothing further to disclose."

In the final arbitration award, the Arbitrator concluded, among many other findings, that TMZ legally terminated the agreement. The Arbitrator also granted TMZ's anti-SLAPP[1] motion, striking four of Starline's counterclaims, and concluded "that the litigation privilege codified in California Civil Code Section 47(b) provides an additional basis for dismissing the four Starline counterclaims." Starline appealed the award to a three-arbitrator JAMS appellate panel (the "Appeal Panel," and collectively with the Arbitrator, the "Arbitrators"). The Appeal Panel affirmed the award, except with respect to the Arbitrator's decision regarding the anti-SLAPP motion, which the Appeal Panel concluded was not allowed in arbitration proceedings. Despite the Arbitrator's interpretive mistake, the Appeal Panel reasoned that Starline could not demonstrate prejudicial error, and its four counterclaims would have otherwise failed.

---

[1] The anti-SLAPP statute creates "a special motion to strike" any cause of action brought against a person for exercising his "right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." Cal. Civ. Proc. Code § 425.16(b)(1).

After the Appeal Panel affirmed the majority of the Arbitrator's award, Starline moved to vacate the award in district court, and TMZ sought to confirm the award. The court denied Starline's motion, and granted TMZ's petition to confirm the award. A few days after the district court entered judgment on the arbitration award, the Ninth Circuit issued *Monster Energy*, interpreting the standard for "evident partiality" to warrant vacatur of an arbitration award under the Federal Arbitration Act (FAA). 940 F.3d at 1132, 1135–36. Based on the reasoning in that case, Starline wrote letters to JAMS requesting disclosure of each Arbitrator's ownership interest therein and "the number of arbitrations and mediations for which JAMS as an entity was engaged by" TMZ, its affiliated entities, and their counsel. JAMS responded that each Arbitrator "issued disclosures consistent with [its/her] legal and ethical obligations during the pendency of the [appeal/arbitration]," and given that the Arbitrators had issued their respective final decisions, they "ha[d] no further jurisdiction. As such, no further disclosures will be provided." Starline filed a Rule 59(e) motion, arguing in relevant part that the Arbitrators and JAMS failed to make disclosures required under the *Monster Energy* decision, but the district court denied that motion as well.

Starline timely appealed to this court, and we have jurisdiction pursuant to 9 U.S.C. § 16 and 28 U.S.C. § 1291.

## II. Failure to Disclose JAMS's Business Dealings with TMZ and Its Counsel

Starline contends that the district court should have granted its Rule 59(e) motion and vacated the arbitration award for evident partiality based on the intervening Ninth Circuit opinion in *Monster Energy*. This court reviews the denial of a Rule 59(e) motion for abuse of discretion. *McCarthy v. Mayo*, 827 F.2d 1310, 1314 (9th Cir. 1987). A

Rule 59(e) motion may be granted when there is an "intervening change in controlling law." *Turner v. Burlington N. Santa Fe R.R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003) (citation omitted). Under the FAA, a district court may vacate an arbitration award "where there was evident partiality . . . in the arbitrators." 9 U.S.C. § 10(a)(2). A few days after the district court entered judgment confirming the arbitration award in this case, the Ninth Circuit issued *Monster Energy*, declaring that an arbitrator exhibited "evident partiality" when he failed to disclose his ownership interest in JAMS, given that JAMS administered a significant number of arbitrations for one of the parties in the arbitration. 940 F.3d at 1132. To that end, the court held that prior to performing arbitrations, "arbitrators must disclose their ownership interests, if any, in the arbitration organizations with whom they are affiliated in connection with the proposed arbitration, and those organizations' nontrivial business dealings with the parties to the arbitration." *Id.* at 1138.

Armed with evidence that TMZ and its counsel each participated in a number of arbitrations and mediations with JAMS in the last five years, Starline argues that the Arbitrators' failure to disclose JAMS's nontrivial business dealings with TMZ and its counsel prior to arbitration constitutes evident partiality under *Monster Energy* sufficient to warrant vacatur of the arbitration award. In the alternative, Starline contends that the Arbitrators' failure to disclose JAMS's prior dealings with TMZ alone establishes evident partiality under *Monster Energy*.

Starline's argument that the arbitration award should be vacated for evident partiality based *solely* on the failure to disclose JAMS's nontrivial business dealings—regardless of whether such dealings were with TMZ itself or with TMZ

and its counsel—seeks a significant and unwarranted extension of *Monster Energy*. *Monster Energy* only requires disclosure when an arbitrator holds an ownership interest in JAMS *and* JAMS engages in nontrivial business dealings with a party to the arbitration. *Monster Energy*, 940 F.3d at 1138. The *Monster Energy* court repeatedly focused on the combination of these two circumstances to evince "evident partiality"; only when *both* exist must they be disclosed. *See, e.g.*, *id*. at 1136 (assessing "(1) whether the Arbitrator's ownership interest in JAMS was sufficiently substantial, *and* (2) whether JAMS and Monster were engaged in nontrivial business dealings," concluding that "[i]f the answer to *both questions* is affirmative, then the relationship required disclosure, and supports vacatur" (second emphasis added)).

In fact, the *Monster Energy* court explicitly stated that knowledge of "the number of disputes that Monster sent to JAMS . . . alone would not have revealed that this *specific* Arbitrator was potentially non-neutral," but rather "the Arbitrator's ownership interest in JAMS [was] the key fact that triggered the specter of partiality." *Id.* at 1135. It would thus ignore *Monster Energy*'s own rationale to interpret it as requiring the disclosure of JAMS's nontrivial business dealings with TMZ regardless of whether the Arbitrators also had an ownership interest in JAMS. The arbitration award need not be vacated solely for the failure to disclose JAMS's nontrivial business dealings with TMZ.

Assuming, without deciding, that at least one of the Arbitrators had an ownership interest in JAMS and was therefore required to disclose JAMS's nontrivial business dealings in this case, Starline's argument that such disclosure must include those nontrivial business dealings with TMZ's counsel, in addition to TMZ itself, is similarly

unpersuasive.      Starline   asserts   that   the   disclosure
requirements set out in *Monster Energy* were intended "to
disclose repeat relationships that may be a source of bias in
the arbitration proceedings," and that attorneys, who may
influence the selection of arbitration forums and individual
arbitrators, pose the same or greater risk of repeat player bias
as the parties themselves.

But *Monster Energy* focuses on the unique *economic*
incentives of a JAMS co-owner to find in favor of repeat
clients. *See, e.g.*, *id*. at 1136 (explaining that "as a co-owner
of JAMS, the Arbitrator has a right to a portion of profits
from *all* of its arbitrations, not just those that he personally
conducts," and as a result, such ownership interest "greatly
exceeds the general economic interest that all JAMS neutrals
naturally have in the organization").      While the court
reasoned that it need not determine the "*exact* profit-share
that the Arbitrator obtained," *id.* (emphasis added), it clearly
deemed the existence of a profit-share as centrally relevant,
not merely the familiarity and rapport established with repeat
players per se.   The *Monster Energy* court was therefore
concerned with the potential bias created by repeat *payors* in
the arbitral forum, as opposed to merely repeat players.[2]
With that context, it makes sense that the court continually
referred to disclosing business dealings with parties only—
i.e., those who actually pay the arbitration bill—as opposed
to parties and counsel.   *See, e.g.*, *id*. at 1135–36 ("[T]o
support vacatur of an arbitration award, the arbitrator's
undisclosed interest in an entity must be substantial, *and* that
entity's business dealings with a *party to the arbitration*

---

[2] If being "repeat players"—without the additional financial
relationship emphasized by *Monster Energy*—was alone sufficient to
create concerns about "evident partiality," that would cast an ethics pall
on any court that has a specialized bar.

must be nontrivial." (second emphasis added)).  We decline to stretch the *Monster Energy* opinion to require disclosure of nontrivial business dealings with counsel.

Accordingly, the district court did not abuse its discretion in denying Starline's Rule 59(e) motion on the basis of a failure to disclose only JAMS's prior business dealings with TMZ or its counsel.

## III.    Failure to Provide a Form Confirming No Conflicts with Boies Schiller

Starline argues that the arbitration award should be vacated because the Arbitrator demonstrated evident partiality by failing to provide a supplemental disclosure form with respect to Boies Schiller when it became TMZ's counsel during the arbitration as the result of a law firm merger.  A district court's denial of a motion to vacate an arbitration award is reviewed de novo.  *Woods v. Saturn Dist. Corp.*, 78 F.3d 424, 427 (9th Cir. 1996).  Starline does not claim that "there was a secret business or personal relationship [between the Arbitrator and Boies Schiller] that was not disclosed," creating a reasonable impression of bias. In fact, a JAMS case manager informed Starline upon request that the Arbitrator "had nothing further to disclose" after the law firm merger.  Instead, Starline essentially equates (1) a failure to provide a standard disclosure form confirming there were *no matters* with Boies Schiller that were required to be disclosed with (2) a failure to disclose a *particular matter*, as identical grounds for establishing an arbitrator's evident partiality.

Starline's argument would literally elevate form over substance.  Starline asserts that the Arbitrator was required to produce the supplemental disclosure form under Rule 15(h) of the JAMS Comprehensive Arbitration Rules &

Procedures.  That rule, however, merely directs the arbitrator to make disclosures as required by law and clarifies that such duty to disclose continues throughout the arbitration process; it does not require the arbitrator to go through the motions of providing a disclosure form, regardless of its contents.  *See* JAMS Comprehensive Arbitration Rules & Procedures, Rule 15(h), https://www.jamsadr.com/rules-comprehensive-arbitration/#Rule-15 (last visited May 4, 2021).  Under the California Rules of Court, Ethics Standards for Neutral Arbitrators in Contractual Arbitration, if an arbitrator becomes aware of a relationship or circumstance that could create the appearance of bias or otherwise affect the arbitrator's ability to do her job under Standard 7(d) & (e) therein, then "the arbitrator must disclose that matter to the parties in writing within 10 calendar days after the arbitrator becomes aware of the matter."  Cal. R. Ct. RB Ethics Standard 7(c)(2).  But it would be nonsensical to interpret this language as requiring the Arbitrator to affirmatively disclose *that she has nothing to disclose*.  The fact that an arbitrator is serving or has, in the past five years, served as an arbitrator in *zero* other arbitrations involving a lawyer in the current arbitration is certainly not something "that could cause a person aware of th[is] fact[] to reasonably entertain a doubt that the arbitrator would be able to be impartial."  *Id*. at 7(d); *see also* Cal. Civ. Proc. Code § 1281.9(a) (requiring an arbitrator to "disclose all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial").

Starline correctly points out that an "arbitrator's failure to disclose to the parties any dealings that might create an impression of possible bias is sufficient to support vacatur." *New Regency Prods., Inc. v. Nippon Herald Films, Inc.*, 501 F.3d 1101, 1105 (9th Cir. 2007) (citation and internal quotation marks omitted).  But the cases that Starline cites in

support of its argument all involve an arbitrator's failure to disclose a *specific* relationship or business dealing that could create the impression of bias—not an arbitrator's failure to provide a *form* confirming there was nothing to disclose. *See, e.g.*, *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 645–46 (9th Cir. 2010) (analyzing whether an arbitrator's "failure to disclose his and [another arbitrator]'s roles in an ethics controversy" constituted evident partiality); *New Regency Prods., Inc.*, 501 F.3d at 1105, 1111 (discussing the arbitrator's failure to disclose his new employment with a company that was negotiating a project with an executive of one of the corporate parties to the arbitration).

"[V]acatur of an arbitration award is not required simply because an arbitrator failed to disclose a matter of some interest to a party." *Lagstein*, 607 F.3d at 646. While there is nothing wrong with providing confirmation that an arbitrator had no prior professional interactions with a law firm, there is no requirement that the arbitrator do so. The Arbitrator's decision not to provide a supplemental disclosure form revealing no further disclosures with regard to Boies Schiller does not demonstrate evident partiality here, and the district court correctly rejected this claim in denying Starline's request to vacate the arbitration award.

## IV. Inappropriate Grant of an Anti-SLAPP Motion and Preventing Starline from Conducting Discovery or Presenting Evidence on Four of its Counterclaims

Starline alleges that the Arbitrator exhibited evident partiality and exceeded her power by inappropriately granting an anti-SLAPP motion and dismissing four of Starline's counterclaims that were the subject of the motion, thereby preventing Starline from conducting discovery and

presenting evidence on such claims.  In addition to allowing a district court to vacate an arbitration award on the basis of an arbitrator's "evident partiality," the FAA also allows for vacatur "where the arbitrators exceeded their powers." 9 U.S.C. § 10(a).  One way an arbitrator can exceed her powers is when she "purport[s] to exercise powers that the parties did not intend [her] to possess." *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 1002 (9th Cir. 2003).  Based on this definition, Starline essentially argues that the parties did not intend the Arbitrator to have the authority to entertain an anti-SLAPP motion—which cannot be used in arbitration proceedings under California law—where the joint venture agreement expressly required the Arbitrator to "follow California law . . . in adjudicating the Dispute."  The Arbitrator's consideration and granting of the anti-SLAPP motion therefore requires vacatur of the arbitration award, according to Starline.

Although an anti-SLAPP motion may have been the incorrect procedural mechanism to consider Starline's counterclaims in the arbitration proceedings, the parties obviously intended for the Arbitrator to exercise jurisdiction over the substance of those counterclaims—and Starline does not contend otherwise.  For instance, the Arbitrator had jurisdiction to consider a more traditional demurrer to those counterclaims for legal insufficiency.  *See* Cal. Civ. Proc. Code § 430.10(e) (explaining "[t]he party against whom a complaint . . . has been filed may object, by demurrer . . . , to the pleading" on the basis that "[t]he pleading does not state facts sufficient to constitute a cause of action"); *see also Trs. of the Cap. Wholesale Elec. Co. Profit Sharing & Tr. Fund v. Shearson Lehman Brothers, Inc.*, 270 Cal. Rptr. 566, 568 (Ct. App. 1990) ("The function of a demurrer is to test the legal sufficiency of a pleading by raising questions of law.").  If TMZ had demurred to Starline's counterclaims

instead of filing an anti-SLAPP motion, the Arbitrator could have sustained the demurrer and would have done so based on the alternative rationale she provided in the arbitration award—that the counterclaims failed as a matter of law pursuant to the litigation privilege codified in California Civil Code Section 47(b).[3]   Sustaining a demurrer with

---

[3] Starline counters that the California courts have declared "[a]n anti-SLAPP suit motion is not a substitute for a demurrer or summary judgment motion." *Lam v. Ngo*, 111 Cal. Rptr. 2d 582, 597 n.12 (Ct. App. 2001); *see also Commonwealth Energy Corp. v. Inv. Data Exch., Inc.*, 1 Cal. Rptr. 3d 390, 393 (Ct. App. 2003).  But Starline ignores the context in which these statements were made.  In those cases, the courts identified a two-prong analysis in considering an anti-SLAPP suit motion: (1) whether defendant demonstrated that the cause of action arose from actions taken in furtherance of his First Amendment rights, and (2) whether plaintiff established a probability that he will prevail on his claim.  *See Commonwealth Energy Corp.*, 1 Cal. Rptr. 3d at 392; *Lam*, 111 Cal. Rptr. 2d at 592.  But "the second part of the anti-SLAPP analysis [is] reached *only if* the defendant satisfies its burden on the first part . . . ." *Anderson v. Geist*, 186 Cal. Rptr. 3d 286, 291 (Ct. App. 2015) (emphasis added).

With respect to the quotes relied on by Starline, the California courts had just determined that the defendants' challenged activities were not protected by the anti-SLAPP statute.  *See Commonwealth Energy Corp.*, 1 Cal. Rptr. 3d at 391 (concluding that the challenged speech was not "being made in connection with a *public issue* or an *issue of public interest*" and therefore not protected by the anti-SLAPP statute); *Lam*, 111 Cal. Rptr. 2d at 597 n.12 (in analyzing acts of violence committed by unidentified protestor defendants, referred to as "the Does," the court explained "[b]ecause this case comes to us in an appeal from an anti-SLAPP suit motion, we confine our determination . . . to the question of whether the Does enjoyed First Amendment protection for their acts. (Answer, with regard to the violent acts: no.)").  Finding the first prong unsatisfied, the courts appropriately declined to reach the merits of plaintiffs' claims.  *See Commonwealth Energy Corp.*, 1 Cal. Rptr. 3d at 393 n.4 (explaining certain caselaw "is only relevant to the second step, which we don't take in this opinion"); *Lam*, 111 Cal. Rptr. 2d at 597 n.12 ("We do not address the substantive merits of each cause of action

respect to such counterclaims likewise could have disposed of such claims prior to Starline conducting discovery or presenting evidence. *See AREI II Cases*, 157 Cal. Rptr. 3d 368, 381 (Ct. App. 2013) ("[Plaintiffs] complain that they were not allowed to take discovery before the demurrer was sustained and ask to pursue discovery to develop specific facts that may support amendments to the complaint. However, a vague suggestion that additional facts might be uncovered through discovery is insufficient to justify allowing plaintiffs further leave to amend their complaint."); *cf. Sui v. Price*, 127 Cal. Rptr. 3d 99, 103 (Ct. App. 2011) ("A demurrer tests the pleading alone, and not the evidence or the facts alleged." (citation omitted)). The Arbitrator did not demonstrate evident partiality or exceed her powers by addressing Starline's counterclaims.

Based on this same interpretation of when an arbitrator "exceeds her power," Starline also asserts that the Appeal Panel exceeded its power by conducting a harmless error analysis on (1) the Arbitrator granting the anti-SLAPP motion and (2) Starline's resulting inability to obtain discovery and present evidence on its counterclaims. But the case that Starline relies on for the first proposition is

---

apart from the question of First Amendment protection."). It makes sense that the courts would then comment that unnecessarily considering the merits of plaintiffs' claims under prong two would "turn the anti-SLAPP statute into a cheap substitute for summary judgment," *Commonwealth Energy Corp.*, 1 Cal. Rptr. 3d at 393, and warn that "[a]n anti-SLAPP suit motion is not a substitute for a demurrer or summary judgment motion," *Lam*, 111 Cal. Rptr. 2d at 597 n.12. But the Arbitrator here, by necessity, *did* reach the second prong and thus the merits of Starline's four counterclaims, finding that they were precluded as a matter of law. It is thus not improper to conclude that the Arbitrator would have reached the same determinations in the context of a demurrer to Starline's four counterclaims.

premised on the Arbitrator acting "in excess of [her] jurisdiction," which, as explained above, was not true here in the sense that she clearly had authority to address and resolve Starline's counterclaims—just not under the procedural rubric of California's anti-SLAPP law. *See In re Marriage of Jackson*, 39 Cal. Rptr. 3d 365, 377–78 (Ct. App. 2006). When an arbitrator (or, as in *Marriage of Jackson*, the trial court) does not act outside of her jurisdiction, the court explained that "[i]t is generally true the existence of procedural error alone . . . is insufficient to set aside an order or judgment; the party challenging the order or judgment must also demonstrate the error was prejudicial." *Id*. at 377. After reversing the award of attorneys' fees granted under the anti-SLAPP statute, the Appeal Panel here reasonably concluded that Starline failed to demonstrate prejudice from the Arbitrator's error because the Arbitrator would have correctly reached the same conclusion outside the anti-SLAPP context.

And with respect to Starline's claimed prejudice from its inability to conduct discovery or present evidence, Starline would not necessarily have had the opportunity to engage in discovery or present evidence on the counterclaims if they had been dismissed as the result of a sustained demurrer. Starline was therefore not improperly deprived of procedural rights it was otherwise guaranteed.

Starline's final argument for vacatur—that the Appeal Panel admitted the Arbitrator "exceeded her authority" and "refused to follow" a California case—is unpersuasive. One way an arbitrator exceeds her power is when she demonstrates a "manifest disregard of law," which requires a showing that "the arbitrator understood and correctly stated the law, but proceeded to disregard the same." *Bosack v. Soward*, 586 F.3d 1096, 1104 (9th Cir. 2009) (citations,

internal quotation marks, and alteration marks omitted). Although the Appeal Panel did say the Arbitrator "exceeded her authority" and "refused to follow" a California case, it also characterized the Arbitrator's anti-SLAPP decision as "misread[ing]" the caselaw and reading it "too narrowly," and concluded that the Arbitrator was "mistaken" and "erred." In the arbitration award, the Arbitrator analyzed caselaw raised by both parties regarding the applicability of the anti-SLAPP statute to arbitrations and provided specific—albeit incorrect—reasons why Starline's two cases were distinguishable from the current matter. In neither case did the Arbitrator intentionally ignore or disregard applicable law; she just misunderstood it to be inapplicable. Because "manifest disregard requires something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand and apply the law," *Bosack*, 586 F.3d at 1104 (citation, internal quotation marks, and alteration marks omitted), the Arbitrator did not manifestly disregard the law here, nor did she "exercise powers that the parties did not intend [her] to possess" to warrant vacatur of the arbitration award, *Kyocera Corp.*, 341 F.3d at 1002.

## V. Arbitrator's Interpretation of California Partnership Law

Starline claims that the Arbitrator exceeded her powers by manifestly disregarding California law in concluding that TMZ did not breach its fiduciary duty to Starline or otherwise violate California partnership law when it launched a celebrity bus tour shortly after ending the joint venture with Starline. "[F]or an arbitrator's award to be in manifest disregard of the law, '[i]t must be clear from the record that the arbitrator [ ] recognized the applicable law and then ignored it.'" *Bosack*, 586 F.3d at 1104 (alterations in original) (quoting *Comedy Club, Inc. v. Improv W.*

*Assocs.*, 553 F.3d 1277, 1290 (9th Cir. 2009)). In other words, Starline must point to record evidence—not just the result—demonstrating "that the arbitrators were aware of the law and intentionally disregarded it." *Id*. (citation and internal quotation marks omitted). "[E]rroneous legal conclusions [do not] . . . justify federal court review of an arbitral award under the statute, which is unambiguous in this regard." *Kyocera Corp.*, 341 F.3d at 994.

Starline specifically contends that the Arbitrator superficially distinguished the case *Leff v. Gunter*, 658 P.2d 740 (Cal. 1983) and related cases from this case by reasoning that those cases involve oral agreements and the present case involves a written agreement. But Starline's quote from *Leff* reveals exactly why this case is different from those cited by Starline:

> It may be assumed, although perhaps not always easily proven, that such competition with one's own partnership is greatly facilitated by access to relevant information available only to partners. Moreover, it is equally obvious that a formal disassociation of oneself from a partnership does not change this situation *unless the interested parties specifically agree otherwise*.

*Id*. at 744 (emphasis added). The parties here "specifically agree[d] otherwise" in the text of their written joint venture agreement. While the agreement included a non-compete clause that extended beyond its term, the parties expressly agreed that such clause would no longer apply to TMZ if TMZ terminated the agreement due to Starline's incurable material breach related to its financial responsibilities. TMZ terminated the joint venture on that basis, and the Arbitrator

determined that TMZ had good cause to terminate the joint venture agreement per its terms.  Starline has failed to point to any caselaw indicating that a party could breach its fiduciary duty when exercising a right granted under the joint venture agreement (i.e., an ability to compete with the joint venture after the extinguishment of the non-compete clause therein).  As a result, the Arbitrator's rationale for distinguishing *Leff* from the current case—far from being a manifest disregard of the law—seems imminently reasonable.  Again, vacatur is not warranted here.

## VI.     JAMS's Response to Starline's Request for Disclosures under *Monster Energy*

Starline contends that the district court abused its discretion in denying Starline's Rule 59(e) motion on the grounds that the district court erroneously interpreted JAMS's response to Starline's request for information under *Monster Energy* as an indication that JAMS and the Arbitrators had nothing to disclose.  As noted previously, the denial of a Rule 59(e) motion is reviewed for abuse of discretion.  *McCarthy*, 827 F.2d at 1314.  "A district court may abuse its discretion if . . . it rests its decision on a clearly erroneous finding of material fact."  *United States v. Plainbull*, 957 F.2d 724, 725 (9th Cir. 1992).

Before turning to this question, we must first determine whether *Monster Energy* applies to these arbitration proceedings given that the decision was published after the district court entered judgment confirming the final arbitration award in this case.  The *Monster Energy* decision indicates that it does.  It is apparent from the opinion that both the majority and the dissent expected the new ruling to apply to arbitration awards that were finalized prior to the issuance of the opinion, where a party could still challenge and legally move to vacate such awards.  *See Monster*

*Energy*, 940 F.3d at 1138 ("Although our dissenting colleague raises concerns about the finality of recent arbitral judgments in light of our ruling in this case, she correctly notes that the applicable statute of limitations to vacate an arbitration award, *which is only three months*, will limit the impact of our ruling on recently decided arbitrations."). As a result, when Starline requested the information required by *Monster Energy*, "the onus [was] on [the] arbitrators to disclose their ownership interests in" JAMS and JAMS's "nontrivial business dealings" with TMZ (if both existed), even though the final arbitration award preceded *Monster Energy*. *Id*.

We must therefore determine whether the district court correctly interpreted JAMS's response to the request for information under *Monster Energy*. The district court clearly erred in this respect. When Starline asked for the *Monster Energy* disclosures with respect to each Arbitrator, JAMS answered that each Arbitrator "issued disclosures consistent with [its/her] legal and ethical obligations during the pendency of the [appeal/arbitration]," and given that the Arbitrators had issued their respective final decisions, they "ha[d] no further jurisdiction. *As such*, no further disclosures will be provided." (emphasis added). This language undoubtedly reflects JAMS's position that the Arbitrators were *not required* to provide the information set out in *Monster Energy* because they no longer had jurisdiction of the matter. But the district court construed this response as the *Monster Energy* disclosure itself—one "indicating the Arbitrators have no ownership interest [in JAMS]." This was clear error. Furthermore, construing JAMS's non-response as a *Monster Energy* disclosure would effectively prevent any challenge to arbitration awards entered prior to *Monster Energy*'s publication, against the obvious intent and understanding of the panel majority.

If none of the Arbitrators had an ownership interest in JAMS or JAMS only had trivial business dealings with TMZ, JAMS could have responded by stating that the Arbitrators "had nothing further to disclose" like it did in response to Starline's request regarding whether the Arbitrator had any conflicts with Boies Schiller.[4] But saying you have nothing further to disclose is markedly different than simply refusing to provide any further disclosures based on the shifty reasoning that the Arbitrators no longer have jurisdiction over the case, which is deliberately evasive on the key question of whether they have something to disclose or not. As such, it was clearly erroneous for the district court to (mis)construe JAMS's response to the request for *Monster Energy* disclosures as indicating that the Arbitrators had

---

[4] To be clear, some response was expected from JAMS and the Arbitrators in this case—either providing the *Monster Energy* disclosure or confirming there was nothing further to disclose—because Starline specifically inquired whether the Arbitrators had anything to disclose under *Monster Energy*. In a different arbitration commencing post-*Monster Energy*, where neither of the parties requested the information, silence from the arbitrator as to the *Monster Energy* disclosure might properly establish a presumption that the arbitrator was not required to provide such a disclosure—i.e., because he did not have an ownership interest in JAMS, or JAMS had only trivial business dealings with the parties, or both. In other words, *Monster Energy* does not necessarily require an arbitrator to provide a piece of paper confirming that he is not required to make a disclosure. We expect and trust that on a going forward basis, arbitrators and JAMS will comply with *Monster Energy*'s holding that "before an arbitrator is officially engaged to perform an arbitration, to ensure that the parties' acceptance of the arbitrator is informed, arbitrators must disclose their ownership interests, if any, in the arbitration organizations with whom they are affiliated in connection with the proposed arbitration, and those organizations' nontrivial business dealings with the parties to the arbitration." *Monster Energy*, 940 F.3d at 1138.

nothing further to disclose, and the district court thus abused its discretion in denying the Rule 59(e) motion on that basis.[5]

## VII.    Conclusion

The district court did not abuse its discretion in denying Starline's Rule 59(e) motion on the grounds that the Arbitrators did not exhibit evident partiality by failing to disclose JAMS's prior business dealings with TMZ or its counsel.  The court likewise did not err when it declined to vacate the arbitration award on the grounds that (1) the Arbitrator did not produce a form indicating she had no conflicts with Boies Schiller, (2) the Arbitrator improperly granted an anti-SLAPP motion, or (3) based on her interpretation of California partnership law.  The district court, however, clearly erred in concluding that JAMS provided a disclosure in accordance with *Monster Energy*, where JAMS declined to make such disclosure and instead asserted that the Arbitrators no longer had jurisdiction over the arbitration.  We therefore remand this particular issue to the district court to consider in the first instance how the parties can obtain from JAMS the information required by *Monster Energy*.

---

 **[5]** Starline argues that the *refusal* to disclose whether the Arbitrators held ownership interests in JAMS and whether JAMS had prior business dealings with TMZ—as opposed to a *failure* to disclose existing ownership interests and nontrivial business dealings—establishes evident partiality, warranting vacatur of the arbitration award.  Because the district court erroneously concluded that JAMS's response constituted a disclosure under *Monster Energy*, it never reached the issue of whether JAMS's refusal to disclose based on a supposed lack of jurisdiction established evident partiality.  Presumably this issue will be mooted on remand once JAMS makes the disclosures required by *Monster Energy*.

**AFFIRMED IN PART; REVERSED IN PART; REMANDED IN PART.**

---

VANDYKE, Circuit Judge, with whom GOULD and LEE, Circuit Judges join, concurring:

In Judge Friedland's *Monster Energy Company v. City Beverages, LLC* dissent, she predicted the majority's decision was "likely to generate endless litigation over arbitrations that were intended to finally resolve disputes outside the court system." 940 F.3d 1130, 1141 (9th Cir. 2019) (Friedland, J., dissenting). This case is certainly some evidence that her warning was warranted. The result here was required by *Monster Energy*, which the opinion faithfully applies. But because I share many of the same reservations about the *Monster Energy* decision that Judge Friedland so aptly articulates in her dissent, I encourage my colleagues to reconsider *Monster Energy* en banc.